### IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**WILLIAM T. SPENCER,**

      **Petitioner,**

**v.**                           **Case No.  4:14cv391-RH/CAS**

**JULIE L. JONES, Secretary,**
**Florida Department of Corrections,[1]**

      **Respondent.**
_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On July 17, 2014, Petitioner William T. Spencer, an inmate of the Florida Department of Corrections, proceeding pro se, filed a 28 U.S.C. § 2254 petition.  ECF No. 1.  On September 15, 2014, the Court entered an order directing the Respondent to file an answer, motion, or other response.  ECF No. 6.  Respondent filed an answer on February 4, 2014, with exhibits.[2]  ECF No. 10.   Although Petitioner was granted leave to file a reply, ECF No. 6, no reply was filed.

_____

[1]The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.  Julie L. Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

[2] Respondent also filed a motion to disqualify the judge initially assigned this case on the grounds that he had previously presided as a state court judge over portions of the

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

By Information filed on April 23, 2009, in case number 09CF1060 in the Second Judicial Circuit, Leon County, Florida, Petitioner was charged with three counts: (1) sexual battery of K.T., a child twelve years of age or older but less than eighteen years, by one in familial custody or authority between May 11, 2008, and November 10, 2008, in violation of section 794.011(b), Florida Statutes; (2) child abuse by impregnation of K.T., a child under age sixteen, between May 11, 2008, and November 10, 2008, in violation of section 827.04(3), Florida Statutes; and (3) sexual intercourse with K.T., to whom the defendant is related by lineal

---

underlying state case.  ECF No. 9.  An order of disqualification was entered on February 4, 2015.  ECF No. 11.

consanguinity, between May 11, 2008, and November 10, 2008, in violation of section 826.04, Florida Statutes.  Ex. C at 9.[3]  Jury trial was held August 15-17, 2011, at which Petitioner testified.  Ex. D & E.  Petitioner was found guilty as charged on all three counts.  Ex. E at 156; Ex. C at 55.

Judgment was entered on August 17, 2011, and Petitioner was sentenced on Count 1 as a prison releasee reoffender pursuant to section 775.082(8)(b), Florida Statutes, to thirty years in prison.  He was sentenced to consecutive five year terms for Counts 2 and 3 and received 868 days credit for time served.  Ex. C at 56-63.  Petitioner appealed to the state First District Court of Appeal, raising one claim of error, alleging the trial court failed to appoint conflict-fee counsel.  Ex. G.  The district court per curiam affirmed without opinion on August 8, 2012.  Ex. I.  The mandate was issued on September 5, 2012.  Ex. J.  *See* Spencer v. State, 95 So. 3d 220 (Fla. 1st DCA 2012) (table).

On September 10, 2013, Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 in the circuit court of Leon County, Florida.  Ex. K.  The motion was dismissed without prejudice for failure to comply with certification requirements, Ex. L.  Petitioner filed a

---

[3] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits A through R submitted with Respondent's answer, ECF No. 10.

second pro se Rule 3.850 motion on October 21, 2013, by the mailbox rule,
raising three grounds: (1) ineffective assistance of counsel in failing to
adequately present and/or develop Petitioner's theory of defense; (2)
ineffective assistance of counsel in failing to object to improper
prosecutorial comments during closing argument; and (3) ineffective
assistance of counsel in failing to inform Petitioner of his right to present
evidence relevant to sentencing.  Ex. N at 1-12.  The circuit court
summarily denied relief on October 31, 2013, Ex. N at 16-17.  Petitioner's
pro se motion for rehearing filed on November 12, 2013, was denied by
order entered on December 4, 2013.  Ex. N at 43.

Petitioner appealed the denial of post-conviction relief to the state
First District Court of Appeal, although according to the district court
docket, no brief was filed.  Ex. M.  The appellate court affirmed per curiam
without opinion on June 6, 2014.  Ex. O.  Petitioner's motion for rehearing
was denied on August 6, 2014, Ex. R, and the mandate was issued on July
2, 2014.  Ex. P.  *See* Spencer v. State, 140 So. 3d 585 (Fla. 1st DCA 2014)
(table).

Petitioner filed this petition for writ of habeas corpus pursuant to 28
U.S.C. § 2254 on July 17, 2014.  ECF No. 1.  He raises three grounds for
relief:

(1) Trial counsel provided ineffective assistance in violation of Petitioner's Sixth and Fourteenth Amendment rights by failing to object to improper prosecutorial comments made in closing argument.

(2) Trial counsel provided ineffective assistance in violation of Petitioner's Sixth and Fourteenth Amendment rights by failing to inform Petitioner of his right to present evidence relevant to sentencing.

(3)  Petitioner was provided ineffective assistance of counsel in violation of Petitioner's Sixth and Fourteenth Amendment rights by the trial court's failure to appoint conflict-free counsel.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' "  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Richter, 562 U.S. at102.  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Richter, 562 U.S. 86, 102-03 (citation omitted).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181.

The state court's factual findings are entitled to a presumption of correctness and to rebut the presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Title 28 U.S.C. § 2254(b).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim."  Preston v. Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971) (citation omitted)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature

of the claim.  Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Picard, 404 U.S. at 277-78.  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  O'Sullivan, 526 U.S. at 845.

  For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  Id. at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  For this Court's purposes, "[t]he question 'is not whether a

federal court believes the state court's determination' under the Strickland

standard 'was incorrect but whether that determination was

unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance,

556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473

(2007)).  "And, because the Strickland standard is a general standard, a

state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard." Knowles, 556 U.S. at 123.  It is

a "doubly deferential judicial review that applies to a Strickland claim

evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1: Failure to Object to Prosecutorial Comment

Petitioner contends that his trial counsel provided ineffective

assistance by not objecting and requesting a curative instruction or mistrial

when the prosecutor in closing argument made what Petitioner alleges was

a comment attacking the personal integrity of defense counsel.  Petitioner

was prosecuted for having sexual intercourse with and impregnating his

daughter, who was age 13 at the time.  Evidence of a DNA match to the

fetus based on a 99.99% probability indicated Petitioner was the father, Ex.

E at 94, although Petitioner testified and denied having intercourse with the

victim.  Ex. E at 122.  The victim testified that Petitioner had sexual

intercourse with her on more than one occasion and impregnated her.  Ex. E at 47-48.

This claim was raised in Petitioner's Rule 3.850 motion and denied by the post-conviction court.  Ex. N at 17.  Petitioner appealed from the denial and, although no brief was filed, the state First District Court of Appeal affirmed per curiam without opinion.[4]  For a state court's resolution to be an adjudication on the merits so that the state court's determination is entitled to deference for purposes of federal habeas review, all that is required is a rejection of the claim on the merits, not an opinion explaining the state court's rationale.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).  "AEDPA deference is due even if the state court decision was summary in nature."  Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1295 (11th Cir. 2012).  Thus, assuming the state appellate court denied the claim on the merits, the claim will be evaluated under the amended AEDPA § 2254(d).  After a thorough review of the record and

---

[4] Petitioner's failure to file a brief and to present this claim did not waive his claim under Florida law.  The First District Court of Appeal held in Watson v. State, 975 So. 2d 572 (Fla. 1st DCA 2008), that where a defendant does not file a brief in an appeal from summary denial of a Rule 3.850 motion, the appellate court is still required to investigate all possible means of relief.  *Id.* at 573 n.1.  *See also* Florida Rule of Criminal Procedure 9.141(b)(2)(C) (providing that briefs are "not required" when a petitioner appeals from summary denial of a Rule 3.850 motion).  When a brief is submitted, however, only those arguments that are fully presented will be preserved.  Watson, 975 So. 2d at 573.

applicable law, the state courts' adjudications were not contrary to clearly

established federal law and did not involve an unreasonable application of

that law.  Nor were the adjudications based on an unreasonable

determination of the facts in light of the evidence.

In his closing argument, defense counsel argued that the "direct

conflict" in the evidence between the victim's testimony and Petitioner's

testimony created reasonable doubt and that Petitioner should be found not

guilty.  Ex. E at 147.  The prosecutorial comments in question occurred in

the State's final closing argument, as follows:

> Mr. Spencer gets up on the stand and tells you, I didn't do
> it.  Ladies and gentlemen, his testimony is backed by 15 prior
> felony convictions.  Are we going to believe science or are we
> going to believe 15 prior felony convictions?  He kept getting
> up there and saying, I didn't do it.  I didn't do it.  Mr. Beasley
> [defense counsel] gets up there and says he told you he didn't
> do it.  I'm sorry the only thing I could think of the whole time
> was the judge from My Cousin Vinny, who quoted that the
> attorney found himself in a unique situation in which he was
> representing a client that said he didn't do it.
> Ladies and gentlemen, take that, compare that to [K.T.s]
> testimony, compare that to the science of DNA. . . .
> Once again, her testimony about what happened is
> backed by science.  His testimony is backed by 15 prior
> convictions.  Which one are you going to believe?

Ex. E at 153.  Petitioner contends that the comment about the lawyer in

"My Cousin Vinny,"[5] which was not objected to, suggested that defense

---

[5] Twentieth Century Fox Film Corporation 1992.

counsel was lying, was unethical, and would do anything in defense of

Petitioner.  ECF No. 1 at 5.  He bases this argument on his characterization

of the lawyer in the film as "a second-rate shyster, by any means

necessary, defense attorney."  ECF No. 1 at 5.  This presumes first, that his

characterization is correct—a presumption that might be contested by

many who have seen the film.  It presumes second, that the jurors were all

familiar with the film.  Although Petitioner alleges the comment essentially

accused his counsel of being a "shyster" by comparing him to the attorney

in the film, the prosecutor's comments made no such accusation.

The comment did not attack the lawyer, but attacked the Petitioner's

claim that he did not have sexual intercourse with the victim, and it rebutted

the defense contention that his mere denial was sufficient to create

reasonable doubt requiring acquittal.  When viewed in context, the

comment was a fair response to defense counsel's closing argument.

On its face, the comment by the prosecutor did not impugn defense

counsel, or suggest he lacked integrity or would lie for his client.  The point

of the comment was simply that defense counsel relied in large part on

Petitioner's claim of innocence in defending him, but that it was not unusual

for a defendant to claim his innocence at trial.  For this reason, counsel has

not been shown to have been deficient in failing to object.

Further, Petitioner has not shown prejudice as required by the second prong of Strickland.  The post-conviction court denied the claim, holding that trial counsel was not ineffective in in regard to this prosecutorial argument because there is "no reasonable probability that the proposed action would have had an impact on the proceedings."  Ex. N at 17. Petitioner contends that if counsel had objected, the trial court would have sustained the objection and would have granted a mistrial, if one had been requested, or at a minimum would have given a curative instruction.  In light of the evidence in the case, there is no reasonable probability that but for counsel's error in failing to object, the result of the trial would have been different and Petitioner would have been acquitted.  The victim testified that she had multiple instances of sexual intercourse with Petitioner.  The evidence was not disputed that she was impregnated and DNA evidence from the fetus showed a 99.99% probability that Petitioner was the father.

Nor is there any likelihood that even if counsel had objected, a mistrial would have been granted.  In Florida, prosecutors are generally afforded wide latitude in presenting closing arguments.  See Fletcher v. State, 168 So. 3d 186, 213 (Fla. 2015).  Improper comments will merit a mistrial only when they "deprive the defendant of a fair and impartial trial, materially contribute to the conviction, are so harmful or fundamentally

tainted as to require a new trial, or are so inflammatory they might have influenced the jury to reach a more severe verdict than it would have otherwise rendered." Miller v. State, 161 So. 3d 354, 382 (Fla. 2015). To warrant a mistrial, the comments must be so prejudicial as to "vitiate the entire trial." *Id.* The state court denied this claim on the merits and that adjudication is entitled to deference unless the comment violated clearly established federal law as determined by the United States Supreme Court.

The Supreme Court has reiterated that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.' " Darden v Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974). Thus, even if the comment in this case was improper, it is not enough to obtain federal habeas relief unless it resulted in a denial of due process. The Eleventh Circuit has also explained that prosecutorial misconduct in closing argument violates the Constitution if it is " 'so egregious as to create a reasonable probability that the outcome was changed.' " Davis v. Zant, 36 F.3d 1583, 1545 (11th Cir. 1994) (quoting Brooks v. Kemp, 762 F.2d 1383,

1403 (11th Cir. 1985) (en banc), *vacated on other grounds,* 478 U.S. 1016 (1986), *reinstated,* 809 F.2d 700 (11th Cir. 1987)).  These standards have not been met; thus, the requirements of Strickland have not been met and habeas relief is not warranted.

The prosecutor's argument was based on the evidence and was not clearly improper; thus, counsel has not been shown to have been deficient in failing to object.  Further, even if the comments were objectionable, they have not been shown to vitiate the entire trial or render the trial fundamentally unfair or a violation of due process such that federal habeas relief is warranted.  Therefore, Petitioner has failed to show that the adjudication of this claim in the state court was contrary to, or involving an unreasonable application of, a clearly established Federal law as determined by the Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence contained in the record.

For these reasons, habeas relief on ground 1 should be denied.

### Ground 2: Right to Present Evidence at Sentencing

Petitioner next contends that his trial counsel rendered ineffective assistance by failing to inform him that he could present mitigating evidence at sentencing.  This claim was raised in Petitioner's Rule 3.850

motion and summarily denied by the state circuit court.  Ex. N at 16.  The

post-conviction court stated:

> Defendant claims counsel was ineffective for failing to
> advise him that he could present mitigating evidence at
> sentencing.  There is no reasonable probability that the
> proposed evidence would have resulted in a lower sentence in
> this case.

Ex. N at 17.  In his Rule 3.850 motion for post-conviction relief, Petitioner

alleged that although the trial court had no discretion in whether to

sentence him as a prison releasee reoffender, the judge would have had

the ability to sentence him in counts 2 and 3 concurrently rather than

consecutively.  Ex. N at 10.  Petitioner alleged that if he had known he

could present evidence at the sentencing hearing, he would have informed

the judge that he had recently started his own business in Tampa, had

become engaged, and was the primary source of income to his family,

which was dependent on him.  He alleged he would have testified that he

"would like the opportunity to be in the lives of his children (five daughters

and two sons) in order to help them make wise decisions and make a

difference in their lives."  Ex. N at 10.  He also alleged that he could have

presented mitigating testimony of his fiancée, his sister, and a college

professor.  Ex. N at 11.

Sentencing occurred immediately after the reading of the jury verdict at trial.  Ex. E at 157-69.  After the state presented evidence to the court that Petitioner met the requirements of a prison releasee reoffender, the trial court asked defense counsel if he had any evidence to present, to which counsel replied in the negative.  Ex. E at 166.  Defense counsel did ask the court to sentence Petitioner on counts 2 and 3 concurrently with the 30 year sentence imposed for count 1.  Ex. N at 167.  Petitioner was not asked directly if he had any statements to make or evidence to present.

Respondent contends that ineffectiveness has not been shown because the decision to present mitigation belongs to counsel, not the client, citing Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir. 1985).  The Eleventh Circuit in Mitchell explained, however, that this rule applies when counsel has conducted a sufficient investigation and made a reasonable strategic decision to present less than all possible available mitigation.  *Id.* Those circumstances were not shown to have been present in his case.

Respondent also contends that so long as counsel makes a reasonable strategic judgment not to present certain mitigation, that decision is presumed effective.  Again, this argument presupposes that counsel has investigated mitigation and discussed available mitigation with his client.  *See* Strickland, 466 U.S. at 681 ("If counsel conducts such

substantial investigations, the strategic choices made as a result 'will seldom if ever' be found wanting.").  No hearing was held in this case, so no evidence was presented to show that counsel was aware of the potential mitigation evidence that Petitioner now asserts he would have presented.  Nor was any evidence presented to show that counsel made a strategic decision, or any affirmative decision, that mitigation evidence was not necessary.

"The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentencing is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus."  *See* Hill v. United States, 368 U.S. 424, 428 (1962).  Under Florida law, if requested, the trial court is required to allow evidence relative to sentencing.  Rule 3.720(b) provides that in the sentencing hearing, "[t]he court shall entertain submissions and evidence by the parties that are relevant to the sentence."  The Florida Supreme Court has held that the rule "makes it mandatory for the trial court, at a sentencing hearing, to receive evidence by the parties of aggravating or mitigating circumstances."  Mask v. State, 289 So. 2d 385, 387 (Fla. 1973).  *See also* Hodierne v. State, 141 So. 3d 1254, 1255 (Fla. 2d DCA 2014); Jean-Baptiste v. State, 155 So. 3d 1237, 1241 (Fla. 4th DCA 2015); Dean v.

State, 60 So. 3d 532 (Fla. 1st DCA 2011); Witt v. State, 983 So. 2d 708

(Fla. 5th DCA 2008); Chillingworth v. State, 846 So. 2d 674 (Fla. 4th DCA

2003); Ventura v. State, 741 So. 2d 1187 (Fla. 3d DCA 1999).

Thus, if counsel had discussed Petitioner's right of allocution with

him, and if Petitioner had known he had a mandatory right to present his

own statement and other mitigating evidence, Florida law would have

required that he be allowed to do so if requested.  That does not answer

the question of whether Petitioner was prejudiced by his counsel's failure to

advise him of that right—a necessary component of a finding of ineffective

assistance of counsel.  Petitioner contends that if his proposed evidence

had been admitted, he would in all probability have received concurrent

sentenced on counts 1 and 2.  "A trial court continues to have 'great

discretion in determining the length of a sentence, so long as it is within the

statutory limits.'  The court has the discretion to reject the testimony

presented at sentencing hearings."  Branton v. State, 187 So. 3d 382, 385

(Fla. 5th DCA 2016) (citations omitted).  Conclusory allegations concerning

how the trial court would have responded, in its discretion, to evidence of

mitigation at Petitioner's sentencing hearing cannot predict with any degree

of probability what the trial court would have done if Petitioner's proposed

mitigation had been submitted.

The state court did not rule on the deficiency prong of Strickland, but concluded instead that even if the evidence proposed in Petitioner's Rule 3.850 motion had been submitted, there is no reasonable probability that the outcome of the sentencing proceeding would have been different.[6] Ex. N at 17. The state court's adjudication as to prejudice is entitled to heightened deference. The standard is difficult to meet and is a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Cullen, 563 U.S. at 181 (quoting Richter, 562 U.S. 86 at 102, and Woodford, 537 U.S. at 24). "The question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).

The state courts' adjudication that Petitioner failed to demonstrate prejudice was not unreasonable. Petitioner contends he would have testified at sentencing that he was a good family man and wanted to spend more time with his five daughters and two sons in order to help them make

---

[6] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

wise decisions.  Ex. N at 10.  He also would have presented the mitigating testimony of his fiancée, his sister, and a college professor.  According to Petitioner, they would have described him as a responsible, family-oriented man and a caring and dedicated father who would do all he could to create a healthy living environment for his daughter and her brother.  Ex. N at 11.  Contrary to this mitigation, the evidence at trial was that he impregnated his 13-year-old daughter and had 15 prior felony convictions, which did not portray him as the responsible, dedicated father and the sound guiding influence in the lives of his children that he hoped the mitigation would show.  Petitioner has failed to demonstrate a reasonable probability that but for trial counsel's error, the result of the sentencing proceeding would have been different.

Accordingly, Petitioner has failed to show, as required by 2254(d) that the adjudication of this claim in the state court was contrary to, or involving an unreasonable application of, <u>Strickland</u> or any other clearly established Federal law as determined by the Supreme Court.  Nor has Petitioner shown that the adjudication was based on an unreasonable determination of the facts in light of the evidence contained in the record.

For these reasons, habeas relief on ground 2 should be denied.

## Ground 3: Conflict-free Counsel

Petitioner initially frames this claim as one of ineffective assistance of

counsel due to his appointed counsel not being conflict-free.  He explains in

his § 2254 petition, however, that he is actually alleging trial court error in

failing to discharge his appointed counsel and provide him new counsel.

ECF No. 1 at 10.  He contends that the trial court should have appointed

conflict-free counsel after his defense counsel took what he describes as a

directly adverse position to him in a Nelson[7] hearing held shortly before

trial.  Petitioner alleges that, at the hearing, he had informed the court of a

lack of communication with counsel and a loss of trust.  He contends he

advised the trial court that counsel had not discussed defense strategy with

him and failed to seek out key witnesses.  This claim was not raised in the

Rule 3.850 motion seeking post-conviction relief but was raised in

Petitioner's direct appeal from his conviction and sentence.  Ex. G at 15-19.

In that appeal, Petitioner characterized the disagreement between his

testimony and that of his appointed counsel at the Nelson hearing as proof

that his counsel took a "position directly adverse to him on what actually

---

[7] Nelson v. State, 274 So. 2d 256, 259 (Fla. 4th DCA 1973) (setting forth the procedure to be followed when a defendant facing trial seeks to discharge appointed counsel for ineffectiveness and requiring that, if a defendant fails to make the showing that his appointed counsel is ineffective, the trial judge may in his discretion discharge counsel and require the defendant to proceed to trial without court appointed counsel).

happened," and thus demonstrated a conflict sufficient to require appointment of new counsel.

On August 11, 2011, approximately one week before trial commenced, the trial court held a case management hearing at which Petitioner alleged that he had a conflict with his appointed counsel due to counsel's failure to discuss strategy and refusal to confer with Petitioner's family members about potential witnesses. Ex. C at 83. Petitioner explained that he had filed a complaint against his counsel and had informed counsel that he wanted a new attorney. Ex. C at 84. Petitioner said he had met with his counsel only three times. Ex. C at 86.

Defense counsel responded to the trial court and stated that he met with Petitioner three times and had spoken briefly at various court appearances. In response to the claim that he refused to talk to family members on the telephone, counsel said he did not have an obligation to talk with them, but that he did return phone calls to one person who had contacted him but she had no information for him. She was only seeking information about the case. Ex. C at 87-88. Counsel said he had subpoenaed one witness, but could not locate two other potential witnesses. He had filed a motion to compel to obtain some information concerning the DNA testing. Ex. C at 87. Counsel informed the trial court

that he had "done a lot of work on Mr. Spencer's case" and was "ready for

trial." Ex. C at 87.  The trial court ruled:

> **THE COURT:** I do not find that Mr. Beasley has provided ineffective assistance of counsel.
>
> Now, you've got the right to have a lawyer.  You have the right to represent yourself.  I'm not going to - - if you decide to discharge him, I'm not going to appoint somebody to take his place, which means you'll be trying this case without a lawyer, which I certainly advise you against.
>
> I'm not going to remove him from the case and the case is set on the trial docket for next week.
>
> Are you telling me unambiguously, clearly that you want to represent yourself on this or - -
>
> **THE DEFENDANT:**  I might as well.  I'm saying he hasn't done a thing for me and he's stabbing me in the back.  I would rather have myself stab myself in the back than have someone else do it.
>
> It's like I'm just - - it's like I'm dealing with the prosecutor, dealing with my own attorney.  And I would rather do that for myself.
>
> And, for the record, Your Honor, I would like to say that this is a conflict of interest.
>
> **THE COURT:** There's not a conflict of interest.  I think that may be a term that you're not - - that's an indication to me that you need a lawyer.  I think you're wanting to play lawyer, but you're not a lawyer.
>
> . . . .
>
> **THE DEFENDANT:**  Your Honor, as I was saying before, it goes back to proper planning.  Mr. Beasley hasn't did anything for me.  If I was to go to trial next week, I would be - - it's a modern day lynching.  It would be a modern day lynching for me to go to trial next week when there's nothing for me, there's nothing there for me.

Ex. C at 89-91.  Ultimately, Petitioner advised the court he would keep his

legal representation and he continued to trial with his appointed counsel.

After Petitioner was tried, convicted, and sentenced, he appealed this claim of error to the state First District Court of Appeal, which affirmed per curiam without opinion.  Ex. G, J.  This affirmance constitutes an adjudication on the merits that is entitled to deference in this federal habeas proceeding. Richter, 462 U.S. at 100.

Respondent contends that Petitioner has failed to demonstrate that he was represented by appointed counsel with an actual conflict of interest. ECF No. 10 at 15.  The trial court recognized that Petitioner was using the terms "conflict of interest" loosely, and that the gravamen of Petitioner's complaint was that his counsel was representing him ineffectively.  Ex. C. The court found that the reasons cited by Petitioner did not rise to the level of ineffective assistance and advised Petitioner he could either keep his current counsel or represent himself if he made the unambiguous request to do so and, if that was his request, a <u>Faretta</u>[8] hearing would be held.  Ex. C at 93.  Petitioner was also informed that he could retain private counsel. Ex. C at 95.  He elected to proceed with his appointed counsel.

On appeal Petitioner argued that his counsel's testimony disagreeing with him regarding how the case was being handled was a "conflict of interest," Ex. G at 15-16, citing <u>Garcia v. State</u>, 846 So. 2d 660

---

[8] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

(Fla. 2d DA 2003).  In <u>Garcia</u>, the court held that the defendant was entitled to a hearing on his letter asking to withdraw his plea based on the claim that his plea was involuntary due to misadvice by counsel.  *Id.* at 660.  At an informal hearing where the defendant was not present, counsel denied misadvising Garcia.  *Id.* at 660.  In holding that the defendant was entitled to a hearing where he was represented by conflict-fee counsel, the court stated: "Counsel's position was adverse to Garcia's.  Once it became clear that Garcia and his counsel had adversarial positions concerning what actually happened while counsel was advising Garcia concerning the plea, Garcia was entitled to conflict-free counsel."  *Id.* at 661.  The authorities relied on by the court in <u>Garcia</u> related to a defendant's request to withdraw a plea based on misadvice by counsel.  The court's statement in <u>Garcia</u> regarding counsel and the defendant disagreeing on what happened regarding the plea was made in a different factual and procedural posture as existed in Petitioner's case.  It did not create a rule that whenever appointed counsel disagrees with the defendant's characterization of the effectiveness of his representation new counsel must be appointed.  The Florida Supreme Court later discussed the holding in <u>Garcia</u> and similar cases, and held that "[w]hen a defendant is actually moving to withdraw a plea in the trial court based on allegations such as that counsel misadvised

him, made affirmative misrepresentations, or coerced him into accepting a plea, the defendant has made claims that give rise to an adversarial relationship." Sheppard v. State, 17 So. 3d 275, 286 (Fla. 2009). Thus, the rule announced in Garcia and Sheppard does not govern the disposition of Petitioner's motion to discharge his appointed counsel under the facts and circumstances of this case.

A true conflict of interest must be actual and not merely potential or hypothetical. Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). The mere possibility of a conflict is insufficient and must be based on a showing that counsel has interests inconsistent with the defendants and that the conflict adversely affected the lawyer's performance. Both prongs of this test— actual conflict and adverse effect on counsel's performance—must be met. See Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir. 1996); Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987). The Eleventh Circuit explained in Smith:

> This circuit has adopted a test to distinguish actual from potential conflict:
>
> > We will not find an actual conflict [of interest] unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests. . . . Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such

> as eliciting (or failing to elicit) evidence helpful to
> one client but harmful to the other.  If he did not
> make such a choice, the conflict remained
> hypothetical.

*Barham v. United States,* 724 F.2d 1529, 1532 (11th Cir.)
(citations omitted), *cert. denied,* 467 U.S. 1230 (1984); *see also
Porter,* 805 F.2d at 939; *Stevenson,* 774 F.2d at 1561.

*Id.* at 1404.

Contrary to Petitioner's contentions, disagreement over whether

counsel is properly preparing for trial and unhappiness with the

representation does not create an actual conflict of interest nor does it

demonstrate prejudice or ineffective assistance requiring appointment of

new counsel.  "Mere unhappiness or anger with the representation of

counsel, or disagreement with regard to counsel's strategic decisions, does

not render counsel ineffective."  Taylor v. State, 87 So. 3d 749, 758 (Fla.

2012).  The Supreme Court in United States v. Cronic has explained:

> [T]he appropriate inquiry focuses on the adversarial process,
> not on the accused's relationship with his lawyer as such.  If
> counsel is a reasonably effective advocate, he meets
> constitutional standards irrespective of his client's evaluation of
> his performance.  It is for this reason that we attach no weight
> to either respondent's expression of satisfaction with counsel's
> performance at the time of his trial, or to his later expression of
> dissatisfaction.

466 U.S. 648, 657 n.21 (1984) (citations omitted).  The Sixth Amendment

does not guarantee that the defendant will be appointed the counsel of his

choice.  Wheat v. United States, 486 U.S. 153, 159 (1988).  Nor does the

Sixth Amendment guarantee that the defendant will have a meaningful

relationship with counsel.  Morris v. Slappy, 461 U.S. 1, 13-14 (1983).

Based on trial counsel's response at the Nelson hearing, the trial

court concluded that no actual conflict of interest was shown and that

counsel was acting in a reasonably effective manner.  The fact that

counsel's characterization of his level of preparation for trial disagreed with

Petitioner's did not provide a basis to find counsel ineffective.  The state

courts' adjudication of this claim has not been shown to be contrary to, or

involving an unreasonable application of, a clearly established Federal law

as determined by the Supreme Court.  Nor has Petitioner shown that the

adjudication was based on an unreasonable determination of the facts in

light of the evidence contained in the record.

For these reasons, habeas relief on ground 3 should be denied.

## Conclusion

Based on the foregoing, Petitioner William T. Spencer is not entitled

to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1)

should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 12, 2016.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**